I'm Michael Freeman Dooley, elected Hennepin County Attorney representing not only Hennepin County, but the 87 Minnesota counties. We are challenging Fannie Mae and Freddie Mac's refusal to pay the Minnesota deed transfer tax. We recognize that numerous courts have considered this issue in favor of Fannie and Freddie since we filed our complaint. What we ask this court to do is to give us a fresh, independent look. And to help frame that look, let me point out briefly in two paragraphs a key observation that frankly has not been clearly discussed in prior decisions concerning Fannie and Freddie. That is the difference of exemptions for federal instrumentalities versus statutory exemptions for everything else. Let me explain. When considering the federal government itself or its instrumentalities, it is clear that because of sovereign immunity, immunity from local taxation is quite broad. And Congress must explicitly waive immunity to allow local taxation. Absent an express waiver, local government cannot impose local taxes. That was the situation in the Bismarck Lumber case. Here in Fannie and Freddie, the broad presumption of immunity from local taxation does not apply. Fannie and Freddie are not federal instrumentalities. In fact, the opposite presumption applies. While Congress has the power to exempt non-federal instrumentalities from local taxes statutorily, it must do so explicitly. Here, by exempting Fannie and Freddie from all taxation, Congress explicitly exempted Fannie and Freddie from direct taxes and did not expressly exempt them from excise taxes like the federal deed tax here. We have pled and argued that Fannie and Freddie are not federal instrumentalities. If they are, we lose because Minnesota law exempts federal government or federal instrumentalities. The district court, the Honorable David Doty, did not reach specifically the question we're talking with you about today, whether Fannie and Freddie are federal instrumentalities. We believe this question must be resolved and ask this court to conclude as a matter of law that Fannie and Freddie are not federal instrumentalities and accordingly are not exempt from the Minnesota deed tax. In the alternative, we ask you to remand this case to the district court so we can develop facts to establish that Fannie and Freddie are not federal instrumentalities and that the logic of Wells Fargo applies and they are not exempt from this deed excise transfer tax. Let me expand on those comments. First off, Fannie and Freddie are not federal instrumentalities under the Supreme Court LeBron test. It's a two-part test. Was the entity organized to achieve a governmental objective, which Fannie and Freddie were, and is it controlled by government appointees, which Fannie and Freddie are not? Therefore, it is not a federal instrumentality. When Fannie and Freddie were established, they were organized to achieve. What's the effect of the charters, the tax exemptions in the charters for those entities? Well, Your Honor, the charters, they're established. Fannie and Freddie were established by that. But throughout the period of time, including in 1968, Fannie and Freddie have been, in essence, unmoored from the federal government. They are not directed or controlled. I'm sorry. Congress didn't change the exemption, did it? They didn't change the exact exemption, but they changed how Fannie and Freddie is operated. They're no longer controlled by federal appointees. They are private corporations, private shareholders, a private board of directors. And, in fact, when Fannie Mae and Jenny Mac were changed, a period of time, the language in 12 U.S.C. section 1716B stated that Fannie Mae is a quote, government-sponsored private corporation, while Jenny Mae remains in the government. A government-sponsored private corporation versus Jenny Mae staying in the government. We think this is key because, as I said earlier, if it's a constitutional supremacy clause exemption, it's broad. And in order for that exemption to be limited, Congress has to do it specifically, as, frankly, it did here or in other, in the Bismarck case, when it exempted certain property considerations. You're saying initially these entities would have been exempt, but they have now become non-exempt because of behavior. Yes, sir, behavior and also congressional action. Now, Your Honor is correct. They did not change the words of the exemption, but they changed the words and the concept for where they once were federal instrumentalities controlled by the federal government reporting to the federal government to today and recently where they are not controlled by the federal government. They're a private corporation, private shareholders. In fact, they even borrowed money from the federal government, which thankfully they paid most of it back. Well, I'm sure that you've looked at County of Oakland, the Sixth Circuit case, which reads pretty well and the Supreme Court denied cert on it. What's your attack on that? Well, Your Honor, I think the problem is some of the courts have been attracted to the concept creatively come up with by Fannie and Freddie that there are two different exemptions, one a property exemption and one an entity exemption. Number one, that distinction was never talked about in Bismarck, Lumber, or Wells Fargo, which are the two leading cases here. Moreover, there is no discussion in any Supreme Court case I've seen that creates this. What this has effectively done is to remove the argument away from, wait a minute, if you're really truly a federal instrumentality like the national federal banks are in some cases, then you have this broad exemption. But if you are no longer a federal instrumentality, you still can be exempt. Congress can still exempt you, but that is to be narrowly construed. And the key language in here, exempt from all taxations imposed now or hereafter, is specifically defined in Wells Fargo, specifically defined as that exemption extends only to all direct taxes and not to indirect taxes as we have here. This excise tax, which is in Minnesota a detransfer tax, is very similar to the estate tax in Wells Fargo. It's a tax upon the transfer, an estate tax from a generation to another generation, or when you and I buy or sell our homes, we pay a deed excise tax, as do property owned by federal banks and federal credit unions. Even the American Fortress Press, a publishing company in Minneapolis, totally owned by the Evangelical Lutheran Church of America, paid over $25,000 in a detransfer tax. It's only equitable that when Fannie and Freddie became private and got into big-time selling of homes, that they should pay that deed excise tax. Your Honors, it's not a lot of fun to be here when some 30- It's always fun to be here, Your Honors, but not when some 30 cases have ruled against you. But no one has really discussed the federal instrumentality with preciseness. The district court did not hear. The district court in the Eastern District of Michigan held that Fannie and Freddie were not federal instrumentalities. Now, when the Michigan court's decision was considered by the Sixth Circuit and their determination that Fannie and Freddie had to pay the taxes reversed them, they did not directly discuss the federal instrumentality issue. Now, a couple of courts have discussed that over a period of time. There's one out of Georgia that says Fannie and Freddie are federal instrumentality. But interestingly enough, there are at least two cases, one in the Ninth Circuit and one in the District of Minnesota, written by Judge Ann Montgomery, that says Fannie and Freddie are not federal instrumentalities for Fifth Amendment due process purposes. So I guess what I'm saying is I want you to go by this creatively established doctrine that Fannie and Freddie Lawyers have done that there's a difference between entity and property and to look at the tax itself. The tax here, the transfer tax, is an excise tax. The estate tax is a transfer tax. Wells Fargo interpreting the exact same language that is in the Fannie charter, exempt from all taxation, is a language we believe those two, that Wells Fargo case, controls, and therefore this tax ought to be issued. If there are no further questions, I'll save the remainder of my time for rebuttal. Thank you. Mr. Johnson, you've got 11 minutes and Mr. Erda's got four. Is that right? That's correct, Judge Murphy. Thank you, Your Honors, and may it please the court and counsel. My name is Michael Johnson. I'm an attorney from Arnold and Porter. I represent the Federal Housing Finance Agency in its capacity as conservator of Fannie Mae and Freddie Mac. I'm speaking on behalf of all appellees today. The district court correctly dismissed this action and should be affirmed. To reverse, this court would need to disregard controlling Supreme Court precedent and create a split with at least two other circuits and depart from the uniform outcomes of dozens of federal district court decisions in cases just like this one. Mr. Freeman gave two arguments, and I'll take them in the order I perceived him to consider their import. First, federal instrumentality. Mr. Freeman's argument is foreclosed by a Supreme Court decision called First Agricultural National Bank of Berkshire County. The exact same argument was presented to the Supreme Court there. That case involved a state, the state of Massachusetts, attempting to impose an excise tax there, a sales tax, on a set of private, shareholder-owned, for-profit entities that had been created by the United States government. In that case, national banks, in our case, Fannie Mae and Freddie Mac. The parallels are striking. The Massachusetts Department of Revenue argued that, well, national banks were probably federal instrumentalities back in the 19th century when they were created, but since then, the economy has sort of grown up around them, and the Federal Reserve System has grown up around them, and there are all sorts of state banks that compete with the national banks, so they shouldn't be treated as federal instrumentalities anymore. And if they're not, the federal statute that protects them from state taxation shouldn't apply. Virtually the identical argument Mr. Freeman makes to this court. What did the Supreme Court say? The Supreme Court said, it's unnecessary. Unnecessary. The Supreme Court's word. Unnecessary to decide the federal instrumentality issue because of pertinent congressional legislation in the banking field. In other words, the Supreme Court held, we're going to apply the statute whether or not they're federal instrumentalities. It's unnecessary to decide that issue. It was unnecessary in First Ag. It's unnecessary here. Whether or not Fannie Mae and Freddie Mac are federal instrumentalities, they are entitled to the protection from state taxation Congress enacted. First Ag isn't the only case. The Ninth Circuit case we cite in our briefs, the California Credit Union League, addressed the exact same issue. A statute protects credit unions from all state and local taxation, with an exception for real property taxes, as there is here. In that case, Anamikis raised the same argument that the Massachusetts Revenue Department raised in First Ag, and that Mr. Freeman raises here, in substance, saying, hey, credit unions might have been federal instrumentalities at some time, but in today's world, they shouldn't be treated that way anymore. And the Ninth Circuit said, you know what? We're not going to address that issue. We're not going to address that issue. 95 F. 3rd at page 31. We do not address that issue because the statute protects the credit unions. So the federal instrumentality issue has no substance, although if the court wanted to reach out and address it, under the Sixth Circuit's decision in Michigan, where an entity is created by the federal government, limited to a particular set of activities, a mission that Congress deems important, and continuously supervised by the federal government to ensure that it is pursuing that mission, it is a federal instrumentality for purposes of state and local taxation. That case is directly on point. The cases Mr. Freeman cited, LeBron and the others that involve constitutional issues, whether something is a government actor for constitutional purposes, not a federal instrumentality for purposes of state taxation, different doctrine, different test, different outcome. They are not controlling here, and frankly, they are not relevant. Finally, on federal instrumentality, if Mr. Freeman were right, then we would have to infer that the Supreme Court has repeatedly made statements that either it didn't mean or that it was just wrong about. Cases like New Mexico, Blaze, Detroit, all cases where the court was considering whether a particular private entity was immune from state and local taxation because it may be a federal instrumentality. The court held that the entities in those cases, two government contractors, one lessee of government property, were not constitutionally immune because they weren't federal instrumentalities. But the court went on to say in each instance, if Congress wants to immunize them by statute, that's Congress's prerogative. I'm paraphrasing, of course, but that's the statement, the substance of the statement at the conclusion of each of those decisions. Entity is not a federal instrumentality, so it is subject to state taxation. But if Congress wants to fix it, that's Congress's prerogative. It can't be that Mr. Freeman is right that you have to be a federal instrumentality to be protected by a congressionally enacted statute. Let's talk about Wells Fargo and Bismarck for a moment. I said for this court to rule in favor of Mr. Freeman's client that it would have to contravene controlling precedent, and I meant that. Bismarck is virtually identical to this case. Bismarck involved a statute that protected an entity. Mr. Freeman says we just made it up. We made up this idea that there are entity exemption statutes and property exemption statutes. Well, let me tell you how the Supreme Court described the statute at issue in Bismarck. It described it as a broad exemption accorded to every federal land bank. Every federal land bank. That's an entity exemption statute. The tax at issue in that case was an excise tax. This court noted in the South Dakota case, the Bismarck holding surely implies the Ninth Circuit held in the 4432 Master Cases of Cigarettes case, the Seventh Circuit in the Rosenau case, every court to consider whether a sales tax is an excise tax has held that it is. So in Bismarck we have an entity exemption statute and a state trying to impose an excise tax on the exempt entity. The Supreme Court says no can do. The statute controls. The tax is barred. The tax is barred. Now I mentioned that this court would have to depart from the Sixth and Ninth Circuits. The court, as Judge Murphy noted, the Sixth Circuit in Oakland ruled on this very issue. That's not the only Sixth Circuit case. In the Michigan case, the court was looking at an entity exemption statute held it barred a sales tax, an excise tax. The Ninth Circuit, California Credit Union League case, again, entity exemption statute covering credit unions, excise tax. It was a hotel occupancy tax, which is almost a quintessential excise tax. So Bismarck controls here. Now, what's plaintiff's rejoinder? And I see I'm into Mr. Erta's time. He's graciously agreed to cede me such time as I may need. I will certainly... I'm mistaken. I'm mistaken. Well, thank you, Mr. Erta, in any event. So Wells Fargo. Why doesn't Wells Fargo apply here? Well, let's examine Mr. Freeman's contention. His contention is that Wells Fargo creates a term-of-art definition for the phrase all taxation or exempt from all taxation. So what we ought to do in the first instance is look at what the Supreme Court actually said. And in the two sentences that Mr. Freeman relies on in his brief at page six, the Supreme Court specifically says, at the time the Housing Act was enacted, an exemption of property from all taxation had an understood meaning. The Supreme Court didn't say the words all taxation have an understood meaning or any exemption from all taxation has an understood meaning. The Supreme Court was extraordinarily careful to use the word property six times, six times in the two relevant sentences. So the thought that the Supreme Court wasn't thinking specifically about property exemptions in Wells Fargo, it's just not so, Your Honors. That's exactly what the court was thinking about, and that's why the court didn't have to address Bismarck, because Bismarck, as we said earlier, was addressing a different kind of statute, a statute the Supreme Court described as the broad exemption according to every federal land bank. So we've got two lines of cases. One that says property exemptions don't cover excise taxes because excise taxes are not imposed on the property. That's the Wells Fargo line. We have no issue with that because our exemption statutes are not property exemption statutes. They're entity exemption statutes. We have the Bismarck line of cases. That includes Bismarck, Oakland, Michigan, California Credit Union League. Those all hold entity exemption statutes cover excise taxes because, of course, excise taxes are imposed on the entities liable for their payment. Imagine if it were otherwise. Imagine if we believed Mr. Freeman's argument that, oh, the tax is imposed on the privilege or on the transaction and not on the entity. Well, suppose payment weren't made and the taxing authority needed to send a deficiency notice. Could it send it to a transaction or a privilege? Could it bring a transaction or a privilege into court? Is there any jurisdiction, any court jurisdiction over transactions or privileges? No, it can't be done. Two things can be taxed, entities and property. That's in personam jurisdiction, in rem jurisdiction. That's how taxes get enforced if they're not paid. That's how they get refunded if they're overpaid. The check goes to the party, the taxpayer, not the privilege, not the transaction. For every tax, there's a taxpayer. If a would-be taxpayer is exempt from all taxation, that entity can't be liable for any tax. Congress enacted an extraordinarily broad exemption here. It exempted these enterprises from all taxes now or hereafter imposed by any state, municipality, locality, county, anything else. If we sat down to draft a more comprehensive exemption, I don't think we could come up with one. So the practical consequence here of ruling in favor of Mr. Freeman would be, number one, similar statutes that exempt very significant economically important entities like Federal Reserve Banks, the FDIC. You're out of time. Thank you, Your Honor. Thank you, Judge. May it please the Court. Patrick Irda for the United States. Your Honors, as Mr. Johnson has explained, the entity's exemptions from all taxation are just as broad as they sound and preclude the transfer tax at issue here. I'd just like to spend a moment on the federal instrumentality argument that was raised by opposing counsel. The federal instrumentality argument, as even opposing counsel admitted in his argument, does not make a witted difference. Opposing counsel noted that Congress had the power to exempt non-federal instrumentalities from taxes. That is damning for his case. That's the whole ball of wax. As long as Congress has that power, then it can extend to private entities like Fannie and Freddie here, and as Judge Smith pointed out, Congress chose when it privatized Fannie and Freddie not to revoke that exemption. So now turning to the actual exemption itself, the language is pretty clear. The statutes provide that the entity shall be exempt from all taxation imposed by states and localities, excepting only direct taxation on real property. Opposing counsel in Hennepin County expressly concede that this is not a direct tax on real property. Therefore, it fits within the broad exemption on all taxation. As Mr. Johnson correctly explained, Wells Fargo does not control. In that case, the Supreme Court was dealing only with exemptions of real property. And here, when they used all taxation in Wells Fargo, it meant all taxation with reference to those taxes that could be imposed on real property. So direct taxation. That's what the Supreme Court was talking about. Of course, in Bismarck-Lumber, the Supreme Court made a more expansive ruling when the taxation exemption dealt with an entity. Here, the taxes come straight from the congressionally authorized operations of Fannie and Freddie, and therefore fit clearly within the all taxation language, as the Sixth Circuit noted in the County of Oakland. If there are no questions, I'll waive the remainder of my time. Thank you. Thank you, Mr. Freeman. Thank you, Your Honor. I would hasten to suggest that Shakespeare, say, me thinks the lady doth protest too much, because now we hear kind of an abandonment of the property and entity exemption discussion, and a focus on federal instrumentality, which is exactly where we think it should be. Now, the court and its clerks can read these cases that counsel and I are discussing as happily as we can. But I want to point out to you that the first Agricultural National Bank case is a banking case, and the courts and the Congress have treated national banks different since McCulloch v. Maryland. They're special and distinct entities. And the question there, as set forth on footnote three in the first ag case, it sets forth congressional language that sets forth the only four areas that states can tax federal banks. Well, the sales tax that Massachusetts was trying to tax isn't one of those. So that really has very little relevance to what we're doing here. The credit union case out of California, well, the credit union was and is a federal instrumentality. Accordingly, they have the broad opportunities to tax. And the discussion about the difference between the constitutional exemptions that I framed and the statutory ones are very briefly noted in one paragraph and really not expanded. But I'm suggesting to the court there is a true and complete difference between the broad federal instrumentality, such as the Federal Land Bank of St. Paul experienced and had in Bismarck, versus the exemption that exists with Fannie, Freddie, and in the estate tax in Wells Fargo. That, in fact, Congress knew what it was doing when it did not exempt Fannie and Freddie from federal income tax. It only says state, local, and municipal. But by using those words, over 110 years of precedent, going back from 1900, that the words all taxation mean only all direct taxation. That's what it said. And there are five cases cited well in the briefs that track that ending up with Wells Fargo. What we're asking this court to do is to move away from the clutter of entity versus property and look at the tax and to look at the constitutional exemptions or the statutory. And we are arguing, members of the court, that the statutory ones are much more limited and that, in fact, the exemptions must be explicitly stated. Well, Congress said explicitly stated all taxation means the exemption is only for all direct taxation. Now, there's a lot of clutter. The court is always good at working through clutter. And I will leave it at that. We never engage in it. Thank you, Your Honors. I have nothing further if you don't. Thank you. We'll look further into the case and decide it in due course.